1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARIA SANTOS THOMAS,                      Case No.  1:19-cv-01271-HBK

12                  Plaintiff,                 OPINION AND ORDER[1]

13          v.                                 (Doc. No.  18)

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                     Defendant.
16

17

18          Maria Santos Thomas ("Thomas" or "Plaintiff") seeks judicial review of a final decision of

19   the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application

20   for disability benefits pursuant to the Social Security Act.  (Doc. No. 1).  The matter is currently

21   before the Court on the parties' briefs, which were submitted, without oral argument.

22          For the reasons set forth below, the Court affirms the Commissioner's decision.

23                 I.      FACTUAL AND PROCEDURAL BACKGROUND

24          On March 25, 2016, Thomas protectively filed a Title II application for supplemental

25   security income with a disability onset date of August 1, 2014.  (AR 30).  Thomas' application

26   was initially denied on April 15, 2016 and denied upon reconsideration on October 10, 2016.

27   ────────────────

28   [1]  Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. § 636(c)(1).
     (Doc. No. 21).

(*Id*).  Thomas then requested and received a hearing before Administrative Law Judge Scot Septer ("the ALJ") on December 21, 2017 where Thomas appeared and testified while represented by her attorney, Jonathan Omar Pena.  (AR 27-41, 52-91).  The ALJ issued his decision on May 18, 2018 that Thomas was not disabled.  (AR 27-46).  The Appeals Council denied Thomas' request for review on May 3, 2019.  (AR 21-26).  Following the Appeals Council's denial Thomas filed the present complaint for judicial review on September 11, 2019.  (Doc. No. 1).

### A.  Hearing Testimony

Thomas testified before the ALJ on December 21, 2017.  (AR 54-83).  She affirmed she was self-employed as a notary public from 2003 to 2013.  (AR 59-60).  She concurrently worked full-time at Mervyn's as a cashier from 2005 to 2006 but left after becoming pregnant.  (AR 60-61).  She did not resume full-time work until 2014, where she worked for a "few months" in a call center for Alorca Corporation.  (AR 62-64).  Thomas left Alorca when a change in her hours conflicted with her ability to watch her kids.  (AR 64).  In 2015, Thomas worked for a "month or two" at J.C. Penney as a cashier, but left because the "[s]tanding, bending ... turning or twisting" while working caused "too much pain."  (AR 65).

As a result of depression, Thomas testified she struggles to get up in the morning.  (AR 66-67).  She also suffers from anxiety and only goes to the grocery store once per week when her daughter drives her.  (AR 67-68).  Thomas also feels uncomfortable visiting doctor's offices.  (AR 68).  Driving exacerbates Thomas' anxiety and thus she rarely goes out alone.  (AR 70-71).  Visiting friends makes Thomas uncomfortable, but she enjoys spending time with her pet chihuahua.  (AR 72-73).  She attended two of her daughter's basketball games but stopped because the crowd made her uneasy.  (AR 75-76).  Thomas does not presently see doctors for her mental health concerns but recently began taking Xanax to relax her and help her sleep.  (AR 71).

Thomas relies on her children for help around the house but still washes dishes and vacuums despite it hurting her back.  (AR 69).  She can handle her personal care.  (AR 70).  Thomas believes she is incapable of full-time work because her back, hip and leg pain is "unbearable."  (AR 76-77).  Thomas estimates "a few minutes" is the most she can stand.  (AR 78).  A back brace prescribed to Thomas provides little relief, and laying on her left side is the only way to alleviate her pain.  (AR

78, 82).

The ALJ vocational expert Cheryl Chandler ("Chandler") testified after Thomas.  (AR 83-89).  Chandler assessed Thomas' Alorca position as sedentary semi-skilled work, and Thomas' Mervyn's job as unskilled light work.  (AR 85-86).  When presented with hypotheticals meant to mimic Thomas' capabilities, Chandler assessed the hypothetical individual could work as an inspector/hand packager, paint spray sorter, or laundry sorter.  (AR 86-88).  All three positions are unskilled, light and are performed by approximately 200,000 people nationally.  (AR 87).

The ALJ then briefly heard from Thomas' attorney Jonathan Omar Pena ("Pena").  Pena requested the ALJ to afford significant weight to Dr. Mark Popper, Ph.D. ("Dr. Popper"), a psychotherapist who previously treated Thomas.  (AR 90).  Pena argued Dr. Popper's opinion deserved significant weight because his treating notes are consistent with Thomas' testimony.  (*Id*).

### B.  ALJ Findings

The ALJ made the following findings of fact and conclusions of law:

- Thomas had not engaged in substantial gainful activity since the application date of March 25, 2016.  (AR 32).

- Thomas had the following severe impairments: anxiety, depression, obesity and degenerative disc disease of the lumbar spine.  (AR 32).

- Thomas did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404 Subpart P Appendix 1.  (AR 32-34).

- Thomas possessed the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) with some exceptions: she cannot frequently climb ladders, ropes, scaffolds, ramps and stairs, but can frequently crawl, crouch, kneel and stoop;  can perform non-complex jobs which require only simple, repetitive tasks; she can interact with co-workers frequently but non-collaboratively;  and she can engage in occasional contact with the general public.  (AR 34-39)

- Thomas is unable to perform any past relevant work.  (AR 39).

- Thomas was born August 13, 1975, making her a "younger individual."  She can speak English and is a high school graduate.  (AR 39).
- Thomas is not disabled regardless of her skills' transferability.  (AR 39-40).
- The national economy contains significant numbers of jobs Thomas can perform.  (AR 40).
- Thomas is not disabled as defined in the Social Security Act on the application date of March 25, 2016.  (AR 41).

## II.     APPLICABLE LAW

A claimant may seek judicial review of any final decision of the Commissioner of Social Security following a denial of benefits.  42 U.S.C. § 405(g).  This Court reviews the Commissioner's final decision under the substantial evidence standard; the decision will be disturbed only if it is not supported by substantial evidence or is based on legal error.  *See* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  "'Substantial evidence' means 'more than a scintilla,' but 'less than a preponderance.'"  *Smolen*, 80 F.3d at 1279 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) and *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)) (internal citations omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  But the court must "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion."  *Tackett*, 180 F.3d a 1098 (citations omitted).  The court "may only consider the reasons provided by the ALJ in the disability determination and 'may not affirm the ALJ on a ground upon which he did not rely.'"  *Luther v. Berryhill*, 891 F. 3d 872, 875 (9th Cir. 2018) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Tommasetti*, 533 F.2d at 1038.  And it is not this Court's

function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's.  See *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## III.    ANALYSIS

Thomas argues the ALJ erred for two reasons:

(1)  the ALJ gave "little weight" to the opinion of Thomas' treating psychotherapist, Dr. Popper, "without providing specific, legitimate reasons supported by substantial evidence;" and

(2)  the ALJ improperly rejected Thomas' "subjective complaints without providing clear and convincing evidence."  (Doc. No. 18 at 8-11).

### A.  The ALJ's Assignment of Little Weight to Dr. Popper's Opinion

Thomas' argues the ALJ erred by "rejecting Dr. Popper's opinion, without providing specific, legitimate reasons supported by substantial evidence."  (Doc. No. 18 at 8-10).  Thomas attended at least 16 psychotherapy sessions with Dr. Popper between June 5, 2015, and July 11, 2016.  (AR 478).  Dr. Popper diagnosed Thomas with Major Depressive Disorder and General Anxiety Disorder.  (*Id*).  As a result of these impairments Dr. Popper estimated Thomas would miss at least four days of work each month and would be unable to work 15% or more of an eight-hour workday.  (AR 335-336).  Copies of Dr. Popper's assessments from at least half of his sessions with Thomas were included in the Administrative Record.  (AR 463-478).

The ALJ considered Dr. Popper's opinion but considered it "opinion evidence" deserving "little weight."  (AR 37-38).

> As for the opinion evidence, Mark D. Popper, Ph.D., provided a check-box form Mental Medical Source Statement noted the claimant was precluded for 10%-15% or more of an 8-hour work day from numerous mental functions.  He speculated she would miss more than 4 days of work per month, due to anxiety symptoms, restlessness, excessive worry, insomnia, fear of facing the p8ublic [sic], fatigue, feeling of abnormal heart beat, marital conflicts, forgetfulness, bulging disc, and breathless due to extopic surgery (Exhibit 3F).  Little weight can be accorded this opinion.  Treatment notes generally reflect the claimant was able to remember recent and remote details of her life, she was noted to have good hygiene.  Although she was frequently noted to be sad and irritable (while discussed marital and child problems), her speech was clear and

5

concise, she demonstrated no psychosis, and her affect was congruent to her mood (Exhibit 7F).

The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Nevertheless, this is inconsistent with the bulk of the evidence that specifically noted the claimant had a generally normal mental status, as discussed above. In fact, his assessment in 2016 noted the claimant was appropriately dressed and well groomed. She arrived promptly to all her appointments; however, she has inconsistent attendance for standing appointments. Her speech was appropriate in terms of range, content, tone, and volume; her rate was normal. She maintained good eye contact, and her gait was uncompromised. She was open to processing her thoughts and feelings in all sessions. She was oriented to person, place, date, time, and situation. Her cognitive functioning appeared uncompromised. She had fair judgment and memory. Her mood was depressed with blunted affect. She was negative for circumstantiality and tangentiality. She was negative for any thought broadcasting or insertions or any loosening of associations and delusions. She was negative for hallucinations. She denied experiencing any current suicidal or homicidal thoughts, ideation, intent or plan. She was negative for alcohol and drugs (Exhibit 8F). Some weight is accorded to the statement at Exhibit 8F, testimony and progress notes (see Exhibit 7F).

Dr. Popper's assessment that Thomas would miss four or more days of work each month, the ALJ noted, was a "check-box form" that "apparently relied quite heavily on [Thomas'] subjective report of symptoms and limitations" and uncritically repeated her statements. (*Id.* at 37). The ALJ found Dr. Popper's report was belied by Thomas' memory, her "good hygiene," her "clear and concise" speech and "generally normal mental status" as indicated in medical records from Dr. Popper and other treating and non-treating experts. (*Id*).

Thomas argues Dr. Popper properly relied on Thomas' subjective statements. (Doc. No. 18 at 9). An ALJ cannot reject a "mental health professional's opinion solely because it is based to a significant degree on a patient's subjective allegations." *Ferrando v. Comm'r of Soc. Sec. Admin*., 449 F. App'x 610, 612 (9th Cir. 2011) (internal quotations omitted). However, an ALJ may disregard a physician's opinion when it is "premised to a large extent upon the claimant's own accounts of his symptoms and limitations" and the ALJ's provides legitimate reasons for doubting their validity. *Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595, 602 (9th Cir. 1999). Here, the ALJ discounted Dr. Popper's reports not only because they relied on Thomas' subjective

1   symptoms but also because they were inconsistent with Dr. Popper's other observations of her

2   health and demeanor and inconsistent with the reports of both treating and non-treating physicians,

3   who determined Thomas was obese but otherwise had fairly unremarkable health issues.  (AR 36-

4   38).  The ALJ specifically pointed to Dr. Popper's 2016 report which found Plaintiff's speech,

5   appearance, eye contact, presence, and judgment all to be good.  (AR 37-38).

6        The ALJ pointed to multiple places in the record indicating Plaintiff was in better health

7   than Dr. Popper's opinion suggested.  (*Id.*).  The ALJ therefore provided legitimate reasons to

8   discount Dr. Popper's conclusions and did not reject his conclusions solely because they were

9   premised on subjective statements.  He was thus permitted under *Morgan* to provide Dr. Popper's

10   opinion limited weight.

11        Thomas further alleges that Dr. Popper's opinion was consistent with the record as a whole

12   and that the ALJ was "cherry-picking" when he concluded otherwise.  (Doc. No. at 10-11).  As

13   mentioned *supra*, the ALJ's opinion described the reports of multiple treating and non-treating

14   doctors and other experts.  (AR 35-38).  The ALJ pointed to numerous occasions where Thomas'

15   condition was described as "normal" but also instances where Thomas described suffering "pain

16   on a daily basis." (*Id*).  After weighing all the evidence before him the ALJ concluded the objective

17   findings indicated Thomas had a "generally normal mental status" and her back issues were "mild."

18   (AR 37, 39).

19        The doctor apparently relied quite heavily on the subjective report of
20   symptoms and limitations provided by the claimant, and seemed to
    uncritically accept as true most, if not all, of what the claimant
21   reported.  Nevertheless, this is inconsistent with the bulk of the
    evidence that specifically noted the claimant had a generally normal
22   mental status.

23        …

24        Overall, the claimant's reported limited daily activities are
    considered to be outweighed by the other factors discussed in this
25   decision, including but not limited to the mild objective findings, and
    very conservative treatment of the claimants chronic back
26   complaints.

    (AR 37, 39)
27
        Where the treating physician's opinion is contradicted by another doctor, the ALJ may
28

7

1  reject this opinion as long as the ALJ makes "findings setting forth specific, legitimate reasons for

2  doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499,

3  502 (9th Cir. 1983); *Garrison*, 759 F.3d at 1012 ("Where an ALJ does not . . . set forth specific,

4  legitimate reasons for crediting one medical opinion over another, he errs."). "An ALJ can meet

5  this burden by setting out a detailed and thorough summary of the facts and conflicting clinical

6  evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d

7  1403, 1408 (9th Cir. 1986). The Court's review of an ALJ's decision is "highly deferential" and

8  we must affirm where substantial evidence underpins their conclusion. *Valentine v. Comm'r Soc.*

9  *Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ demonstrably weighed both the

10  evidence supporting and undermining the severity of Thomas' symptoms and concluded they

11  overall did not support a disability designation. While the Court may or may not fully agree with

12  the ALJ's conclusion, when "evidence is susceptible to more than one rational interpretation, it is

13  the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679. The Court finds the ALJ's

14  opinion to give Dr. Popper's opinion little weight, properly set forth "specific, legitimate reasons

15  for doing so that are based on substantial evidence in the record." *Murray*, 722 F.2d at 502.

16        **B.  The ALJ's Rejection of Thomas' Subjective Complaints**

17        Thomas argues the ALJ erred in determining Thomas' testimony was inconsistent with the

18  record as a whole. (Doc. No. 18 at 10-11). An ALJ employs a two-step analysis to determine

19  whether to credit a claimant's "testimony regarding subjective pain." *Lingenfelter v. Astrue*, 504

20  F.3d 1028, 1035–36 (9th Cir. 2007). First, the ALJ assesses "whether the claimant has presented

21  objective medical evidence of an underlying impairment which could reasonably be expected to

22  produce the pain or other symptoms alleged." *Id*. (internal quotations omitted). If this test is met,

23  "and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the

24  severity of her symptoms only by offering specific, clear and convincing reasons for doing so."

25  *Id*. (internal quotations omitted). The clear and convincing reasons standard is "the most

26  demanding required in Social Security cases." *Moore v. Comm. of Soc. Sec. Admin.*, 278 F.3d

27

28

920, 924 (9th Cir. 2002).[2]  Because the ALJ determined Thomas suffered from severe

impairments, the Court must consider whether the ALJ found evidence of malingering and, if not,

whether the ALJ offered clear and convincing reasons to reject Thomas' testimony.

### 1.  Malingering

The ALJ never explicitly accuses Thomas of malingering.  He does write that because

Thomas had only worked "sporadically" it was an open question whether her "continuing

unemployment is actually due to medical impairments."  (AR 38).

> A review of the claimant's work history shows that the claimant
> worked only sporadically prior to the alleged disability onset date,
> which raises a question as to whether the claimant's continuing
> unemployment is actually due to medical impairments.

(AR 39).  A mere insinuation of malingering by the ALJ, however, is insufficient.  *Kessler v.*

*Colvin*, 2016 WL 2654274, at *15 (E.D. Cal. May 10, 2016).  The analysis accordingly shifts as

to whether the ALJ provided specific, clear, and convincing reasons to reject Thomas' Testimony.

### 2.  Specific, Clear and Convincing Reasons to Reject Thomas' Testimony

The ALJ gave a number of reasons for concluding Thomas' testimony was inconsistent with

the overall record.  First, the ALJ finds Thomas' testimony is "not entirely consistent with the

medical evidence.  (AR 35).

> After careful consideration of the evidence, the undersigned finds
> that the claimant's medically determinable impairments could
> reasonably be expected to cause the alleged symptoms; however, the
> claimant's statements concerning the intensity, persistence and
> limiting effects of these symptoms are not entirely consistent with
> the medical evidence and other evidence in the record for the reasons
> explained in this decision.
>
> As for claimant's statements about intensity, persistence, and
> limiting effects of his or her symptoms, they are inconsistent because
> they are not supported by the objective evidence of record.

(AR 35).  The ALJ then spends three pages identifying numerous medical records that

depicted Plaintiff's health as largely unremarkable, in contrast to Thomas' testimony and thus

undermining her credibility.  (AR 35-38).  An ALJ "may consider the objective medical evidence

---

[2] The Court notes the Commissioner's objection to this standard for the record.  Doc. No. 19 at 9, fn. 4.

1   in his credibility analysis." *Reyes v. Berryhill*, 716 F. App'x 714 (9th Cir. 2018).  The

2   inconsistencies between Thomas' testimony and the other medical evidence were a legitimate

3   reason for the ALJ to discount Thomas testimony.  The record reflects substantial evidence of

4   these inconsistencies.  *See* Nurse Lee's findings that Thomas displayed normal mood, affect,

5   behavior, judgment, and thought content (AR 432, 437, 441, 445); Nurse Lee noted Plaintiff had

6   normal ranges of motion with some tenderness and normal muscle tone (AR 432, 437, 441, 445);

7   MRI of lower back showed mild degenerative changes at L4-L5 and L5-S1 and no evidence of nerve

8   root impingement (AR 317); and EMG was normal with no evidence of polyneuropathy or

9   radiculopathy (AR 378).  Contradiction between a claimant's testimony and his medical records is

10   a sufficient basis to reject the claimant's subjective testimony.  *Carmickle v. Comm., Social Sec.*

11   *Admin.*, 533 F. 3d 1155, 1161 (9th Cir. 2008) (*citing Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th

12   Cir.1995)).

13         The ALJ also discounted Thomas' testimony because the treatment of her "chronic back

14   complaints" was "very conservative" and there were "significant gaps" in her treatment record.

15   (AR 39).

16              Overall, the claimant's reported limited daily activities are
              considered to be outweighed by the other factors discussed in this
17              decision, including but not limited to the mild objective findings, and
              very conservative treatment of the claimants chronic back
18              complaints.  The record reflects significant gaps in the claimant's
              history of treatment, which tend to suggest her symptoms may not
19              have been as severe as alleged.

20   (AR 39).  Thomas testified that her back pain was "unbearable" but the Administrative Record

21   revealed it was treated through medication and there is no evidence surgery was suggested.  (AR

22   76-77, 365-366).  Records "of conservative treatment is sufficient to discount a claimant's

23   testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir.

24   2007).  It was therefore permissible for the ALJ to find Thomas' testimony inconsistent because

25   of conservative and intermittent treatment.

26         Additionally, the ALJ discounted Thomas' testimony based on his appraisal of her

27   "appearance and demeanor" at the hearing was "generally unpersuasive."  (AR 39).

28              Another factor influencing the conclusions reached in this decision

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> is the claimant's generally unpersuasive appearance and demeanor while testifying at the hearing.  It is emphasized this observation is only one among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity.

(AR 39).  An ALJ can "consider a claimant's demeanor and appearance at the hearing."  *Evans v. Berryhill*, 759 F. App'x 606, 608 (9th Cir. 2019).  While the ALJ's explanation for why he found Thomas unpersuasive is arguable vague, demeanor and appearance are nonetheless legitimate considerations when assessing Thomas' credibility against the overall record.  And, as "emphasized" by the ALJ it was "only one among many" relied upon to discredit Thomas.

Further, as mentioned earlier, the ALJ noted Thomas' sporadic work history.  (AR 39).

> A review of the claimant's work history shows that the claimant worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments.

(AR 39).  While the ALJ may not have made a showing for malingering, a claimant's inconsistent work record can be considered when assessing credibility. *See* 20 C.F.R. § 416.929(c)(3). Thomas testified that she did not work full-time between 2006 and 2014 and that she only worked a few months in 2014 and 2015.  (AR 62-65).  The ALJ did not err in findings Thomas' limited recent employment undermined her credibility.

Based on the foregoing, the Court finds the ALJ articulated clear and convincing reasons supported by substantial evidence for discrediting Thomas' subjective claims.  The ALJ has therefore satisfied his burden under *Lingenfelter.*

## IV.    CONCLUSION

The Court does not make independent factual determinations, re-weigh the evidence or substitute its decision for that of the ALJ.  Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence.  Applying this standard of review, the Commissioner's decision is due to be affirmed.

1    Accordingly, it is **ORDERED**:

2    1.  The decision of the Commissioner of Social Security is AFFIRMED for the reasons set

3    forth above.

4    2.  The Clerk of Court is directed to enter judgment in favor of the Commissioner of

5    Social Security and terminate any pending motions/deadlines and close this case.

6

7    Dated:    September 29, 2021

8                                    HELENA M. BARCH-KUCHTA
                                     UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                     12